IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DAVID BOY FULLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:15-cv-02185-WMA-TMP |
| | ) |
| NURSE PARVIN, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

The magistrate judge filed a report and recommendation on February 19, 2016, recommending that the defendants' motion for summary judgment (doc. 12) be granted and that the plaintiff's federal claims against all defendants be dismissed with prejudice. The magistrate judge further recommended that the plaintiff's state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c). The parties were allowed fourteen (14) days to file objections and advised that the failure to file such objections would bar any later challenge or review of the factual findings of the magistrate judge. The plaintiff filed objections with the court on February 26, 2016. (Doc. 22).

The plaintiff first states his shock at the recommendation of the magistrate judge and suggests the report and recommendation is akin to pandering. (Doc. 22 at 1). The plaintiff complains that the report did not "favor the party opposing the

motion for summary judgment" as required by Rule 56, Fed.R.Civ.P. (*Id.*, at 2). The plaintiff then repeats the facts set forth in his original complaint. (*Id.*). Nothing in the plaintiff's objections adds any weight to his claim that the defendants were deliberately indifferent to his medical needs. Because the plaintiff failed to establish that he had an objectively serious medical need, and that the defendants were deliberately indifferent to that need, summary judgement in favor of the defendants is appropriate. *Bingham v. Thomas*, 654 F3d 1171, 1175 (11th Cir. 2011). The magistrate judge meticulously considered the very facts the plaintiff reiterates in his objections.

Although the plaintiff's objections are somewhat incoherent, they center around two main arguments, specifically that the medical records produced by the defendants are incomplete, and that the magistrate judge failed to correctly consider those medical records.

    A. *Objections to the Medical Records*:

The plaintiff objects to the magistrate judge having ordered the defendants to produce the plaintiff's medical records and, when the same were not produced, ordering the defendants to produce the records a second time. (Doc. 22 at 4-5). According to the plaintiff, allowing the defendants to then produce the records demonstrated leniency towards the defendants. (*Id.*, at 4). The plaintiff objects that the defendants were not held in contempt. (*Id.*, at 14-15). The magistrate judge's

determination to allow the defendants a second opportunity to comply with the order, based on the plaintiff's motion requesting such relief, is not a proper basis for an objection to the report and recommendation.[1]  The plaintiff also complains that the medical records that the defendant did produce in response to the court's order were not in compliance with the order, because the records produced included months the court did not specify. (*Id*., at 15).  The defendants' production of additional medical records to provide a more complete snapshot of the plaintiff's medical ailments is not improper under Rule 26(b) or Rule 34, Fed.R.Civ.P.

The plaintiff also asserts that the defendants failed to produce portions of the plaintiff's medical records (doc. 22 at 8-9, 15). These objections focus on the plaintiff's belief that he was given Cipro, without his knowledge, prior to November 4, 2015, lab work. (*Id*.).  Based on his own interpretation of the lab results that are contained in his medical records, the plaintiff speculates other records should exist. (*Id*., at 9, 15-16).  The plaintiff wildly speculates that a non-party nursing supervisor removed other documents from the plaintiff's medical records. (*Id*., at 9-10).  The

---

[1] Whether the magistrate judge allowed the defendants a second opportunity to produce medical records, and whether those records were more complete than what was requested, has no bearing on the report and recommendation.  In essence, the plaintiff asserts that when the defendants failed to produce the medical records in response to the Order of January 20, 2016 (doc. 17), the magistrate judge erred in entering an order on February 12, 2016, allowing the defendants to either comply with the January 20, 2016, Order or show cause why they should not be held in contempt. (Doc. 19).  However, the February 12, 2016, Order was in direct response to the plaintiff's motion to compel filed with the court on February 9, 2016.  (Doc. 18).  The court granted the plaintiff the very relief he requested, namely ordering the defendants to comply with the January 20, 2016, Order.

plaintiff's speculation as to other records he believes should exist is not sufficient to create a genuine issue of material fact.

The plaintiff next objects based on his belief that defendant Nurse Parvin committed perjury. (Doc. 22 at 5-6). Even assuming the plaintiff could establish the truth of his allegation of perjury and demonstrate that defendant Parvin intentionally lied under oath, such a finding does not assist the plaintiff. The magistrate judge noted the apparent contradiction in defendant Parvin's testimony that the plaintiff did not have an infection at any time after August 27, 2015, and the evidence of prescriptions for antibiotics given to the plaintiff. (Doc. 21 at 13, n. 6).

The plaintiff also objects to the magistrate judge's lack of finding that defendant Parvin's affidavit was "cut and dry" and "just sang a legal tune." (Doc. 22 at 16). Whether defendant Parvin's affidavit contained the "facts" the plaintiff believed it should contain is not an appropriate objection to the report and recommendation.

The plaintiff asserts that an incident report from August 27, 2015, is missing from the records produced. (Doc. 22 at 6). However, as the events of that day are well-documented, and the plaintiff was not provided with any medical care other than a blood draw, the court cannot draw the evil intent the plaintiff attributes to the August 27, 2015, blood draw not being documented on an incident report.

*B. The Magistrate Judge's Consideration of the Medical Records.*

The plaintiff objects that the magistrate judge did not find that the "unsanitary needle" caused an "infection to enter into Fuller's body." (*Id.*, at 5). Such a finding is not a "fact." Even assuming that the plaintiff could establish that the needle used was "unsanitary" as opposed to "unwrapped," the plaintiff provides no evidence in support of his allegation that the needle puncture on August 27, 2015, was in fact the cause of his infection. Because the plaintiff failed to produce evidence to establish that the needle did in fact cause an infection, the defendants are entitled to summary judgment on this claim. *See e.g., Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) ("[A] pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.").

The plaintiff objects to the lack of a finding that the August 27, 2015, blood draw caused an infection. He states "I, Fuller, Plaintiff, CAN NOT tell this Honorable Court that the medical 'professionals' ever told me I had an infection, nor where <u>IT STARTED FROM</u> . . ." (doc. 22, at 8), but, "[i]t is more than COMMON SENSE to figure that unsanitary needle used by <u>NURSE PARVIN</u> was the initial cause of the virus/infection that terrorized Plaintiff Fullers body for 4 (four) months." (*Id.*, at 10) (emphasis and grammar in originals). However, the cause of an infection is a question which requires medical evidence. *See Baker v. Prison Health Services, Inc.*, 2006 WL

5

2686935, *3 (M.D. Ala. 2006) ("The plaintiff's opinions are insufficient to create a genuine issue, and his failure to support his claim with medical or scientific evidence is fatal to it.") (citing *Brown*, 906 F.2d at 670); *Dixon v. Campbell*, 2006 WL 1214813, *3 (M.D. Ala. 2006) (plaintiff failed to meet burden to avoid summary judgment where plaintiff claimed he was the victim of "poisoning and blood borne pathrogens (sic)," but failed to produce any medical or other expert evidence substantiating his claims). The plaintiff cannot rely on the mere timing or on his own beliefs to establish that needle used on August 27, 2015, could cause the claimed infection, let alone testify that it did in fact cause such an infection. *See Brown*, 906 F.2d at 670 (the plaintiff "has not submitted a doctor's diagnosis or any medical evidence supporting his allegations that the City of Miami drinking water at Dade County jail caused his stomach pains and headaches . . . We therefore conclude that [the plaintiff's] allegation of contaminated drinking water . . . is unsubstantiated and completely speculative.")

The plaintiff asserts the medical records show that he had flu-like symptoms on August 29, 2015, which is "akin to viral infection not present in FULLER before the injection by Parvin . . ." (Doc. 22 at 6) (emphasis in original). On August 29, 2015, the plaintiff was seen with complaints that "I've been shaking and having diarrhea." "I'm having a cough and think I'm getting a cold." (Doc. 20-2 at 22 (re-submitted as plaintiff exhibit 5)). Because of his symptoms, he was referred to a doctor. (Doc.

20-1 at 59 (re-submitted as plaintiff exhibit 6)).  No diagnosis appears in the medical records, however, the plaintiff asserts "[i]t stands to reason someone diagnosed <u>FULLER</u> as having a virus and pursued anti-biotics prescriptions as <u>FULLER</u> states above." (Doc. 22 at 6) (emphasis in original).  However, no such evidence appears in the medical records and the plaintiff fails to connect any such diagnosis to the prescription for antibiotics on September 23, 2015.

    Although the plaintiff insists he was prescribed antibiotics a result of a September 23, 2015, hospital visit (doc. 22 at 6), nothing in evidence reflects a hospital visit on that date, any diagnosis of an infection, or that this antibiotic was prescribed during such a hospital stay.  Rather, the records reflect an October 26, 2015, hospital trip, when the plaintiff was seen for management of chest pain and palpitations.  (Doc. 20-6 at 7-9).  He was noted to have no fever, and no recommendation was made for an antibiotic to be prescribed. (Doc. 20-6 at 7-8).  He was not noted as positive for Hepatitis B.  (*Id.*).  Rather, the plaintiff underwent a esophagagstroducdenoscopy and colonoscopy with biopsies at Brookwood Hospital, and was diagnosed with erosive esophagitis and erosive gastritis, as well as inflamed hemorrhoids. (*Id.,* at 13).  His discharge medications do not include any antibiotic. (*Id.*, at 25-27).  Thus, the plaintiff's speculation and unsupported allegations of the August 27, 2015, needle stick causing an undocumented viral infection is contradicted by the medical records and does not create a genuine issue of material fact.  For

7

factual issues to be considered genuine, they must have "a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). *See also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The medical records do reflect that the plaintiff was prescribed amoxicillin[2] on September 23, 2015. (Doc. 20-1 at 47, 55-56 (re-submitted as plaintiff exhibits 8, 9 and 10)). They reflect that the plaintiff was prescribed Cipro[3] on November 17, 2015. (Doc. 20-1 at 36 (re-submitted as plaintiff exhibit 11)). However, the plaintiff asserts that lab work collected on November 4, 2015, and reported on November 7, 2015, proves he was being given Cipro without his knowledge before November 17, 2015, because on one test, labeled as a test for "pantoea agglomerans," the reported value for ciprofloxacin was reported as $\langle = 1$.[4] (Doc. 22 at 8-9, 15-16; *see* doc. 20-3 at 4).

---

[2]Amoxicillin is generic Augmentin, which is used to treat lower respiratory, middle ear, sinus, skin, and urinary tract infections that are caused by certain bacteria. http://www.pdrhealth.com/drugs/augmentin

[3]Cipro is an antibiotic used to treat certain bacterial infections of the urinary tract, lower respiratory (lung) tract, skin, bone, joint, stomach, sinuses, and prostate. Cipro may also be used to treat other bacterial infections and conditions. http://www.pdrhealth.com/drugs/cipro

[4]From the medical records submitted, the court notes that this lab test was run either in response to or along with the urine culture test run at the same time, which was tested for this organism. (Doc. 20-3 at 3-4 (doc. 20-3 at 4 resubmitted as plaintiff exhibit 12)). The results, reported as I, R or S, are likely a list of the susceptibility or resistence of this bacteria to various

Thus, he continues, because he was given Cipro, he must of had an infection at that time. (Doc. 22 at 8-9). However, the documents the plaintiff relies on for the assumption he was given Cipro do not support that conclusion and the evidence of record contradicts this speculative theory of the plaintiff. A plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (where plaintiff produced nothing in support of his claim, beyond his own conclusory allegations, summary judgment was appropriate). Thus, the plaintiff's own speculation based on his unsubstantiated interpretation of a lab report is insufficient to oppose a motion for summary judgment.

Similarly, the plaintiff asserts that "in the light most favorable to the non-moving party" the magistrate judge should have found that the alleged viral infection was caused by the needle puncture. (Doc. 22 at 12). Any such conclusion is outside of the personal knowledge of the plaintiff and cannot be treated as a fact which he can establish by testimony alone. *See e.g., Brown*, 906 F.2d at 670. Even taking as established "fact" that the plaintiff was stuck with a needle by defendant Parvin on August 27, 2015, that the plaintiff was prescribed antibiotics a month later, and that

---

antibiotics. *See e.g.*, http://www.ncbi.nlm.nih.gov/pmc/articles/ PMC3895565. The results of this test apparently have no relationship to the medications the plaintiff was currently prescribed, the plaintiff would need to produce medical evidence in support of his theory otherwise.

the plaintiff had a positive Hepatitis result three months later, these facts still do not support a conclusion that the plaintiff got Hepatitis B from the August 27, 2015, needle stick.[5]

Additionally, the plaintiff relies on the lab report for initial blood screening for Hepatitis as evidence that he actually has Hepatitis B.[6] (Doc. 22 at 8; see also doc 20-3 at 7 (resubmitted as plaintiff exhibit 26)). The plaintiff asserts that the lab report notation of "AB POSITIVE" means not only that he has a Hepatitis B infection, but also that it is a viral infection he received from the August 27, 2015, needle stick. (*Id*.). The plaintiff has failed to show that he has the background or training to offer such evidence which is clearly within the realm of medical knowledge. *See e.g., Baker*, 2006 WL 2686935 at *3. Nor can he establish that "the testing – DIAGNOSING – takes time in prison. Especially with Welfare State Health-care system. 8-27-15 to 10/12/15 – is not that long [for the virus to appear]" (emphasis in original). (Doc. 22 at 8). Again, such a claim requires medical or other expert evidence for substantiation. *See Dixon*, 2006 WL 1214813 at *3. Moreover, the lab

---

[5]The fact that antibiotics are used to treat bacterial infections and not viral infections is within the realm of knowledge of which a court may take judicial notice. *See* Rule 201(b)(2), Fed.R.Evid.; http://www.cdc.gov/features/getsmart/. Hepatitis B is a viral infection. Although the plaintiff's test for Hepatitus B was negative (*see* doc. 20-3 at 7 (re-submitted as plaintiff exhibit 26)), a positive result would not be a likely reason for treatment with an antibiotic.

[6]As discussed in the report and recommendation, the lab work was done to allay the plaintiff fears about the August 27, 2015, needle stick. (Doc. 21 at 9). As discussed *supra*, no evidence supports the plaintiff's allegation that he had Hepatitis B in November 2015.

report itself reflects that a positive result for HbsAb "indicates exposure to Hepatitus B virus due to an active infection or vaccination."[7] (Doc. 20-3 at 7 (re-submitted as plaintiff exhibit 26).

The plaintiff asserts that Corizon LLC employees lied to him about these test results, and told him the results were negative. (Doc. 22 at 17-18). However, the plaintiff's own misinterpretation of his lab results is not a basis on which the court can deny the defendants' motion for summary judgment. Moreover, a difference in medical opinion between medical personnel and the inmate as to the diagnosis or course of treatment is insufficient to support an Eighth Amendment claim. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

The plaintiff again objects to the report and recommendation on the basis that he proved the August 27, 2015, incident occurred, he began experiencing symptoms of a viral infection two days later, and the October 4, 2015, lab results prove that he had a viral infection. (Doc. 22 at 17). Even if the court could take each of these facts as established, this would not change the result of the magistrate judge's analysis.

---

[7]Interpretation of lab results is a matter for medical practitioners and not something to which the plaintiff may testify. His speculation as to the meaning of his results seemingly is incorrect and wholly unsupported. As stated on the report itself, a hepatitis B surface antibody ("HbsAb") positive result, means either the individual has been vaccinated or has recovered from a hepatitis B infection. (Doc. 20-3 at 7). A positive result thus means that the individual's immune system has successfully protected itself from the hepatitis virus. "Someone who is antibody positive is not infected, and cannot pass the virus on to others." http://www.hepb.org/pdf/understanding_ blood_tests.pdf. A positive test for Hep N Surf. Ag would indicate a current infection (*id*.), but the plaintiff's results were negative. (Doc. 20-3 at 7).

Rather, as previously stated, merely assuming the plaintiff had a viral infection on August 29, 2015, does not establish that it was caused by the needle stick of August 27, 2015. Lacking is any evidence that the August 27, 2015, needle stick could cause a viral infection of the sort about which the plaintiff complains. The plaintiff even states that "Plaintiff Fuller can not prove that the injection of Parvin, August 27, 2015, was the initial cause of a viral infection suffered by Fuller, BUT the Defendant(s) hereof CANNOT prove that it wasn't the cause." (*Id*., at 22) (emphasis in original). However, the defendants do not have the burden to "prove" any facts as they did not initiate this lawsuit. They only must show an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). *See also Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990) ("a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."). No genuine issue of material fact was established by the plaintiff.

    *C. Miscellaneous Objections*

Within his objections to the report and recommendation, the plaintiff complains about iron studies, toenail cutting, and other unrelated events which he believes fall short of the health care he deserves. (Doc. 22 at 12-13). He complains that he receives "factory style medical care." (*Id*., at 13). He complains that his diagnosis of

a mood disorder proves he is "mentally slow" and that he is illiterate, a "teenager in an adult body." (Doc. 22, at 12). The plaintiff also argues that he is mentally ill.[8] (*Id.*, at 13). He complains that he received 350 pages of documents from the defendants which were unnumbered, out of order, and faded in color. (*Id.*, at 15). He complains that defendant Parvin summoned two guards to the lab before injecting the plaintiff. (*Id.*, at 16-17). He complains that relevant medical records were not produced. (*Id.*, at 17). He complains that the "Magistrate obviously has no idea that a VIRAL INFECTION will terrorize a body, setting infections, causing burning pains. . ."[9] (*Id.*, at 19). He complains that defendant Parvin committed assault against him. (*Id.*, at 21). He complains that the magistrate judge construed the special report as a motion for summary judgment, but should not have done so in the light most favorable to him. (*Id.*, at 18).

---

[8]The plaintiff asserts his exhibits 18-22 support that he is mentally ill. (Previously submitted as doc. 20-2 at 9 (plaintiff exhibit 18); doc. 20-2 at 27 (plaintiff exhibit 19); doc. 20-2 at 46 (plainitff exhibit 20); doc. 20-2 at 16 (plaintiff exhibit 21); and doc. 20-2 at 18 (plaintiff exhibit 22). These exhibits are medical records from September 20, 2015, through November 13, 2015, which reflect that the plaintiff is followed in the Chronic Disease Clinic for high blood pressure, diabetes, and hyperlipidemia, and that he had blood sugar testing and was administered medication for diabetes. These records also reflect that the plaintiff is both non-compliant with prescribed medical care and hostile to the medical providers.

[9]This is an allegation which requires evidence in support of it. Neither the magistrate judge nor the district judge may simply assume that viral infections terrorize bodies or cause burning pains.

Nothing in the plaintiff's objections adds weight to his allegations that the defendants were deliberately indifferent to his medical needs. The plaintiff has offered no evidence creating a genuine issue of material fact. The evidence indicates that the plaintiff did, in fact, receive adequate medical care, and though he may have been displeased with the level of that care, his displeasure is not enough to establish deliberate indifference. The medical care provided a prisoner is not required to be "perfect, the best obtainable, or even very good." *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D.Ga. 1980).

The plaintiff's perception regarding the efficacy of his treatment and his desire for different or additional treatment does not establish a constitutional violation. *Hamm v. DeKalb County*, 774 F.2d. 1567, 1575 (11th Cir.1985). At best, the plaintiff has provided the court with no more than his own unsubstantiated beliefs and opinions about the caliber, appropriateness, efficaciousness, and timeliness of the medical care he received. Such unsupported beliefs and opinions are insufficient to create a genuine dispute and certainly do not do so in this case. He has no constitutional right to specific medical treatment on demand. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[S]ociety does not expect that prisoners will have unqualified access to health care."). Under the circumstances of this case, the treatment the plaintiff received was neither grossly incompetent nor inadequate. The plaintiff has not shown

by medical evidence consistent with Rule 56, Fed.R.Civ.P., that the treatment he received was so deficient as to amount to deliberate indifference in violation of the Eighth Amendment.  Consequently, the magistrate judge correctly concluded that the plaintiff failed to establish a genuine issue of material fact to support a claim for deliberate indifference on the part of defendants.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, the court is of the opinion that the magistrate judge's report is due to be and is hereby is **ADOPTED** and the recommendation is **ACCEPTED**.  The court **EXPRESSLY** finds that there are no genuine issues of material fact and the defendants are entitled to judgment in their favor as a matter of law.

Accordingly, the defendants' motion for summary judgment is due to be **GRANTED** and the plaintiff's federal claims are due to be **DISMISSED WITH PREJUDICE**.  To the extent that the plaintiff attempts to bring state law claims, any such claims are due to be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).  The plaintiff's motion for Federal District Court to Enter Charges of Perjury and Contempt upon the Defendants and Appoint Counsel (doc. 23) is **MOOT**. A Final Judgment will be entered.

**DATED** this 4th day of March, 2016.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE